IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BIOVERATIV INC., BIOVERATIV THERAPEUTICS INC., and BIOVERATIV U.S. LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 17-914 (RGA) |
| CSL BEHRING LLC, CSL BEHRING GMBH, and CSL BEHRING LENGNAU AG, | ) ) ) ) | |
| Defendants. | ) ) | |

**BIOVERATIV'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS, OR IN THE ALTERNATIVE TO AMEND THE COMPLAINT TO REMOVE, BIOVERATIV'S CLAIMS OF INFRINGEMENT OF U.S. PATENT NO. 9,629,903 AND TO DISMISS CSL'S COUNTERCLAIMS BASED ON THAT PATENT**

*Of Counsel:*

MCDONNELL BOEHNEN HULBERT & BERGHOFF LLP
Paul H. Berghoff
Alison J. Baldwin
Joshua R. Rich
James C. Gumina
Sarah E. Fendrick, Ph.D.
James L. Lovsin
Nicole E. Grimm
Daniel F. Gelwicks
300 South Wacker Drive
Chicago, Illinois 60606
 (312) 913-0001

September 10, 2020

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Thomas C. Grimm (#1098)
Jeremy A. Tigan (#5239)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
tgrimm@mnat.com
jtigan@mnat.com

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

I.   NATURE AND STAGE OF THE PROCEEDINGS .............................................................. 1

II.  SUMMARY OF ARGUMENT ......................................................................................... 1

III. STATEMENT OF FACTS ............................................................................................. 3

IV.  ARGUMENT ................................................................................................................. 6

    A.   Dropping the '903 Patent From the Case Will Simplify the Trial ............................... 6

    B.   Dismissal of Bioverativ's Infringement Claims of the '903 Patent is Warranted ........ 8

    C.   In the Alternative, Leave Should Be Granted to Amend the Complaint to Remove the
        Infringement Claims of the '903 Patent ...................................................................... 10

       1.   Rule 15 and Related Authority Strongly Supports Amending the Complaint to
            Remove the Infringement Claims of the '903 Patent .................................................. 11

       2.   Pursuant to Rule 16, Good Cause Exists to Modify the Case Schedule .................... 13

    D.   CSL's Counterclaims Based on the '903 Patent Should Be Dismissed Because There
        is No Longer a Case or Controversy to Confer Subject Matter Jurisdiction .............. 14

    E.   Admissibility of Evidence and Argument Should Be Decided Closer to or at Trial .. 17

V.   CONCLUSION ............................................................................................................. 18

# TABLE OF AUTHORITIES

**Cases**

*Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013)................................................................ 3, 14, 16, 17

*AVM Techs. LLC v. Intel Corp.*, C.A. 15-33-RGA, D.I. 637 (D. Del. Apr. 19, 2017) .................. 6

*Bechtel v. Robinson*, 886 F.2d 644 (3d Cir. 1989)............................................................ 12

*Benitec Australia, LTD. v. Nucleonics, Inc.*, 495 F.3d 1340 (Fed. Cir. 2007)....................... 14, 15

*Dole v. Arco Chem. Co.*, 921 F.2d 484 (3d Cir. 1990) .................................................... 11

*Evonik Degussa GmbH v. Materiel Inc.*, C.A. 09-cv-636-NLH,
    2016 WL 1367735 (D. Del. Apr. 6, 2016) ................................................................ 15

*Foman v. Davis*, 371 U.S. 178 (1962) ........................................................................ 11

*Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683 (9th Cir. 2011) ................. 13

*Improved Search LLC v. Microsoft Corp.*, C.A. 16-650-JFB,
    D.I. 102 (D. Del. May 28, 2019) .......................................................................... 9

*In re Amp'd Mobile, Inc.*, 395 B.R. 582 (Bankr. D. Del. 2008) ...................................... 10

*Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99 (3d Cir. 2015)............................... 14

*Matsushita Battery Indus. Co. v. Energy Conversion Devices, Inc.*, C.A. No. 96-101-SLR,
    1997 WL 811563 (D. Del. Dec. 23, 1997)................................................................ 15

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007)........................................... 14

*Merck & Co., Inc. v. Watson Labs., Inc.*, C.A. 05-658-GMS,
    2006 WL 1537375 (D. Del. June 2, 2006) ................................................................ 15

*Newman v. Bayliner Marine Corp.*, 166 F.3d 343 (9th Cir. 1998)................................... 9

*Nilssen v. Motorola, Inc.*, 203 F.3d 782 (Fed. Cir. 2000)........................................... 11

*Ockert v. Union Barge Line Corp.*, 190 F.2d 303 (3d Cir. 1951)................................... 8

*Orexigen Therapeutics, Inc. v. Actavis Labs. FL, Inc.*, C.A. 15-451-RGA,
    D.I. 182 (D. Del. Aug. 31, 2017) ........................................................................ 9

*Papera v. Pa. Quarried Bluestone Co.*, 948 F.3d 607 (3d Cir. 2020) ............................. 9

*Pegasus Dev. Corp. v. DirectTV, Inc.*, 00-CV-1020-GMS,
    2002 WL 598457 (D. Del. Apr. 18, 2002) ................................................................ 12

*SCVNGR, Inc. v. DailyGobble, Inc.*, C.A. 17-cv-1857-RGA,
   2018 WL 4725289 (D. Del. Oct. 2, 2018)..................................................................... 8, 10

*Stored Value Solutions, Inc. v. Card Activation Techs., Inc.*,
   796 F. Supp. 2d 520 (D. Del. 2011) ..................................................................... 13

*Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054 (Fed. Cir. 1995).............. 14, 15

*TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869 (Fed. Cir. 2011) (en banc)....................................... 16

*U.S. v. Kushner*, C.A. 17-2372, 2018 WL 2230552 (D.N.J. May 15, 2008).............................. 10

*Venetec Int'l., Inc. v. Nexus Med., LLC*, 541 F. Supp. 2d 612 (D. Del. 2008) ........................... 13

*Wakefield v. N. Telecom, Inc.*, 769 F.2d 109 (2d Cir. 1985) ....................................... 11

*Young v. Wilky Carrier Corp.*, 150 F.2d 764 (3d Cir. 1945)....................................... 10

**Rules**

Fed. R. Civ. P. 12 ................................................................................................ 2, 14

Fed. R. Civ. P. 15 ................................................................................................ 2, 11

Fed. R. Civ. P. 16 ............................................................................................ 2, 11, 13

Fed. R. Civ. P. 41 ................................................................................................ 2, 8

Fed. R. Evid. 402 ............................................................................................... 5, 18

Fed. R. Evid. 403 ............................................................................................... 5, 18

## I.        NATURE AND STAGE OF THE PROCEEDINGS

On July 7, 2017, Plaintiffs Bioverativ Inc., Bioverativ Therapeutics Inc., and Bioverativ

U.S.  LLC (collectively, "Bioverativ") initiated this Action against Defendants CSL Behring

LLC, CSL Behring GmbH, and CSL Behring Lengnau AG's predecessor (collectively, "CSL")

for infringement of U.S. Patent Nos. 9,670,475 (the "'475 Patent"), 9,623,091 (the "'091

Patent"), and 9,629,903 (the "'903 Patent").  CSL has asserted that these patents are not

infringed, invalid, and unenforceable due to inequitable conduct.  D.I. 18.  Following discovery,

the Court ruled on motions for summary judgment, *Daubert* motions, and motions *in limine*.

D.I. 263, 265-267, 288-289, 302, 312.

The parties filed a pre-trial order on March 11, 2020.  D.I. 278-279.  The Court

rescheduled a jury trial in this case from March-April 2020 to October 2020 due to the

coronavirus pandemic.  D.I. 287, 301.  On August 27, 2020, the parties requested that the

October 2020 trial be rescheduled due to the pandemic, and on August 28, 2020, the Court

canceled the trial and will reschedule it to a date to be determined.  D.I. 314-316.

At a February 21, 2020 hearing, Bioverativ informed the Court it wished to drop the '903

Patent from this case.  D.I. 262, 25-26.  The parties were unable to negotiate a stipulation to

dismiss the '903 Patent.  On September 9, 2020, Bioverativ sent an executed covenant not to sue

on the '903 Patent to CSL.  The covenant not to sue on the '903 Patent is attached as Exhibit 1.

## II.        SUMMARY OF ARGUMENT

To streamline issues and simplify the jury trial, Bioverativ seeks to drop the '903 Patent

from the case.  Fewer patents, claims, and related issues at trial would simplify the trial and

therefore conserve judicial, juror, and party resources.  Bioverativ sought to work with CSL to

drop the '903 Patent from the case on an agreed basis for over five months, but CSL would not

agree to a stipulation of dismissal based upon the standard covenant not to sue that Bioverativ proposed (and has now executed and provided to CSL).

Specifically, although the parties exchanged drafts of a stipulation of dismissal and drafts of a covenant not to sue and agreed in principle that the '903 Patent should be dropped from the case, they have been unable to reach agreement.  A point of disagreement between the parties is the impact of dropping the '903 Patent on CSL presenting evidence and argument related to the '903 Patent at the jury trial on the remaining two asserted patents, the '091 Patent and the '475 Patent.  Bioverativ proposed that dropping the '903 Patent from the case should not limit or otherwise affect Bioverativ's ability to object to'903 Patent evidence and argument at trial.  CSL conditioned its agreement on dropping the '903 Patent on providing it with an unfettered ability to present at trial any evidence or argument related to the '903 Patent.  Bioverativ did not accept CSL's condition and sent CSL an executed covenant not to sue on the '903 Patent.

Pursuant to Rule 41 of the Federal Rules of Civil Procedure, Bioverativ moves to dismiss its claims of infringement of the '903 Patent without prejudice.  There is no legal prejudice to CSL in dismissing those infringement claims from the case.  The covenant not to sue ends Bioverativ's claims of infringement of the '903 Patent against CSL and assures CSL that Bioverativ will not re-assert them.  Ex. 1, Covenant, ¶ 1.  In the alternative, pursuant to Rules 15 and 16, Bioverativ moves for leave to amend the complaint to remove its claims of infringement of the '903 Patent.  Bioverativ has not unduly delayed in seeking to remove its infringement claims of the '903 Patent from the case, Bioverativ does not seek to remove these claims in bad faith or for delay, and CSL will not be unduly prejudiced by their removal.

Further, pursuant to Rule 12, Bioverativ moves to dismiss without prejudice CSL's counterclaims based on the '903 Patent.  Bioverativ's requested dismissal, or, in the alternative,

requested amendment, of its claims of infringement of the '903 Patent and Bioverativ's covenant not to sue moots any actual case or controversy concerning CSL's counterclaims based on the '903 Patent. Bioverativ's covenant not to sue is based on the covenant not to sue in *Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013) that the Supreme Court found mooted the counterclaim there at issue. Because Bioverativ's covenant not to sue on the '903 Patent is substantively similar to the *Already* covenant not to sue and Bioverativ's covenant is broad and unequivocal, Bioverativ has met its burden to show that "the covenant encompasses all of [CSL's] allegedly unlawful conduct." *Id.* at 94. In the face of Bioverativ's covenant not to sue on the '903 Patent, CSL cannot establish a basis for this Court to maintain subject matter jurisdiction over CSL's counterclaims based on the '903 Patent.

The parties' disagreement about the impact of dropping the '903 Patent on CSL presenting '903 Patent-related evidence and argument at the trial on the '091 Patent and '475 Patent has no bearing on Bioverativ's covenant not to sue and the lack of a case or controversy regarding CSL's counterclaims based on the '903 Patent. In any case, CSL's position that it should have an unfettered ability to present '903 Patent-related evidence and argument – even after that patent is dropped from the case – is an attempted end run around the Rules of Evidence. Admissibility of such evidence and argument should be decided closer to or at trial.

## III.    STATEMENT OF FACTS

Bioverativ has asserted that CSL actively induces Idelvion® users to directly infringe the '091 Patent, the '475 Patent, and the '903 Patent. D.I. 278, 1. Bioverativ's claims of infringement of the '903 Patent are set forth in Count III of the Complaint. D.I. 1, ¶¶ 58-69.

CSL has denied Bioverativ's claims and asserts that the '091 Patent, the '475 Patent, and the '903 Patent are invalid, not infringed, and unenforceable. CSL's declaratory judgment counterclaims based on the '903 Patent are set forth in the Third Counterclaim, Sixth

Counterclaim, and Seventh Counterclaim.  D.I. 18, ¶¶ 105-123, ¶¶ 134-138, ¶¶ 139-163.  CSL's

Third Counterclaim seeks a declaration of invalidity for the '903 Patent, CSL's Sixth

Counterclaim seeks a declaration of noninfringement of the '903 Patent, and CSL's Seventh

Counterclaim seeks, among other things, a declaration of unenforceability of the '903 Patent.

At the February 21, 2020 hearing on the motions for summary judgment and *Daubert*

motions, Bioverativ communicated its intent to drop the '903 Patent from the case:

> [MR. BERGHOFF:] We have three patents in issue.  We may very well try and
> simplify the trial and drop that pretrial order to make things simpler for the jury.
>
> THE COURT: Yeah.  I saw in the motion to amend that you were saying if you
> could amend, you'd drop it, and I took that as a hint that you'd probably be
> dropping it any way.
>
> MR. BERGHOFF: Yes, I think we will, Your Honor.  We'll work that out with
> defendants.

D.I. 262, 25-26.  Four days after that hearing, Bioverativ sent CSL a draft stipulation of dismissal

related to the '903 Patent.  Exs. 2-A and 2-B.  In February and March 2020, the parties

exchanged drafts of the stipulation but never agreed upon one.  Exs. 2-A, 2-B, 2-C, and 2-D.

In a motion *in limine*, Bioverativ argued that CSL should be precluded from presenting

evidence and argument on the construed term "trough" in the '903 Patent to describe the scope of

the asserted claims of the '091 Patent and '475 Patents (which do not include the term "trough"

in the asserted claims).  D.I. 272, 1-2.  The Court denied that motion, stating that "I take it that

the '903 patent is not going to be at issue at the trial and that my construction of trough will not

be disclosed to the jury."  D.I. 302, 1.

The parties have not been able to reach agreement on dropping the '903 Patent from the

case.  In April 2020, despite having previously exchanged draft stipulations of dismissal, CSL

for the first time raised the issue of receiving a covenant not to sue on the '903 Patent before

dismissing its counterclaims based on the '903 Patent.  Bioverativ understood that CSL would

4

provide a draft covenant for Bioverativ's review.  On July 8, 2020, not having received a draft

from CSL, Bioverativ inquired into the status of the draft covenant.  CSL did not respond to that

communication.  Having never received a draft covenant, Bioverativ sent CSL a draft covenant

on July 29, 2020.  Exs. 3-A and 3-B.  CSL provided Bioverativ with a substantially re-written

draft covenant and stipulation of dismissal on August 11, 2020.  Exs. 4-A, 4-B, 4-C.

A point of disagreement between the parties is the impact of dropping the '903 Patent on

CSL's ability to present evidence and argument related to the '903 Patent at the jury trial on the

remaining two asserted patents, the '091 Patent and '475 Patent.  Bioverativ's position is that

after the '903 Patent is dropped from the case, '903 Patent-related evidence and argument would

be irrelevant or unduly prejudicial in the trial on the other asserted patents.  Fed. R. Evid. 402,

403.  In this regard, Bioverativ proposed that dropping the '903 Patent from the case should not

limit or otherwise affect Bioverativ's ability to object to related evidence and argument at trial.

Ex. 2-D, ¶ 5 (Bioverativ proposing objection language).  Bioverativ explained its position to CSL

back in March, during the exchange of draft stipulations of dismissal.  Ex. 2-A.

By contrast, CSL appears to want to introduce '903 Patent-related evidence and argument

at trial even after that patent is dropped from the case.  In fact, CSL conditioned its agreement on

dropping the '903 Patent on its unfettered ability to present related evidence and argument at

trial.  Ex. 4-B, at 2 (CSL proposing "CSL Behring has agreed to dismiss its counterclaims . . .

provided that Bioverativ . . . does not use the dismissal of claims relating to the '903 Patent to

impede CSL Behring's presentation of evidence relevant to claims and defenses remaining in

*Bioverativ I* and *Bioverativ II*"); Ex. 4-C, ¶ 6 (CSL proposing "Neither Party shall rely on this

Stipulation and Order or the '903 Covenant Not to Sue as grounds to object to any evidence in

this Action or to object to any evidence in *Bioverativ II*" and striking Bioverativ's proposed objection language).[1]

Bioverativ did not accept CSL's revisions to the covenant and stipulation of dismissal. Having previously explained Bioverativ's position on the issue, on September 9, 2020, Bioverativ sent the executed covenant not to sue on the '903 Patent.  Ex. 1.  The executed covenant not to sue is substantially similar to Bioverativ's draft covenant.  *Compare* Ex. 1, *with* Ex. 3-B.  Bioverativ's covenant insulates CSL, related business entities, successors in interest to CSL, and all customers from litigation based on patent infringement of the '903 Patent based on Idelvion® and any Coagulation Factor IX (Recombinant) Albumin Fusion Protein that is no more than colorably different from Idelvion®.  Ex. 1, Covenant, ¶¶ 1, 6.

## IV.    ARGUMENT

### A. Dropping the '903 Patent From the Case Will Simplify the Trial

To streamline issues and simplify the jury trial, Bioverativ seeks to drop the '903 Patent and proceed to trial on the '091 Patent and '475 Patent.  As noted by this Court, withdrawing "claims, theories, contentions, opinions, etc." happens "all the time, with the encouragement of the court to reduce the complexity of cases going to trial."  *AVM Techs. LLC v. Intel Corp.*, C.A. 15-33-RGA, D.I. 637, at 5 (D. Del. Apr. 19, 2017) (Ex. 5).

Fewer patents, claims, and related issues at trial would simplify the trial and therefore conserve judicial, juror, and party resources.  The asserted claims of the '903 Patent are different from the asserted claims of the '091 Patent and '475 Patent.  By dropping the '903 Patent from the case, these differences would not need to be considered by the Court and jury.

---

[1] *Bioverativ II* refers to the second patent infringement action between the parties in this Court. *Bioverativ Inc. et al. v. CSL Behring LLC et al.*, C.A. 20-332-RGA.

Bioverativ currently asserts claims 1 and 22 of the '903 Patent, claim 24 of the '091 Patent, and claims 19 and 29 of the '475 Patent.  D.I. 278, at 1.  The table below highlights the differences in the asserted claims of the '903 Patent when compared to the asserted claims of the '091 Patent and the '475 Patent (independent claims from which asserted claims depend are also included).

| Asserted '903 Patent Claims | Asserted '091 Patent Claims | Asserted'475 Patent Claims |
|---|---|---|
| 1. A method of treating hemophilia B in a human subject in need thereof, comprising intravenously administering to the subject multiple doses of about 50 IU/kg to about 100 IU/kg of a chimeric Factor IX ("FIX") polypeptide comprising FIX and an FcRn binding partner ("FcRn BP") at a dosing interval of about 10 days to about 14 days between two doses, wherein the FcRn BP comprises Fc or albumin, wherein the **trough level of the plasma FIX activity after each administration is at least 3 IU/dL after six days**, and wherein the administration treats the human subject by reducing the frequency of spontaneous bleeding. | 1. A method of treating hemophilia B in a human subject in need thereof comprising intravenously administering to the subject multiple doses of about 50 IU/kg to about 100 IU/kg of a chimeric factor IX ("FIX") polypeptide comprising FIX and an FcRn binding partner ("FcRn BP") at a dosing interval of about 10 days to about 14 days between two doses, wherein the FcRn BP comprises Fc or albumin, wherein the administration maintains the plasma FIX activity of the subject above 1 IU/dL between the dosing interval, and wherein the administration treats the human subject by reducing the frequency of spontaneous bleeding. | 1. A method of controlling a bleeding episode in a human subject in need thereof, comprising administering to the subject multiple doses of about 25 IU/kg to about 50 IU/kg of a chimeric Factor IX ("FIX") polypeptide comprising FIX and an FcRn binder partner ("FcRn BP") at a dosing interval of about 7 days between two doses, wherein the FcRn BP comprises Fc or albumin and wherein the subject exhibits the plasma FIX activity above 1 IU/dL during the dosing interval.<br><br>19. The method of claim 1, wherein the FIX is identical to amino acids 1 to 415 of SEQ ID NO:2.<br><br>29. The method of claim 1, wherein the chimeric FIX polypeptide is administered intravenously. |
| 22. The method of claim 1, wherein the FIX is at least **95% identical** to amino acids 1 to 415 of SEQ ID NO:2. | 24. The method of claim 1, wherein the FIX is at least 90% identical to amino acids 1 to 415 of SEQ ID NO:2. | |

As highlighted in the table, and as noted in one of Bioverativ's motions *in limine*, claim 1 of the '903 Patent recites "trough level" which is not part of the claims of the '091 Patent or '475 Patent.  *Supra* III.  Moreover, this claim element received its own construction by the Court.

7

D.I. 118.  Claim 1 of the '903 Patent also uniquely recites "at least 3 IU/dL" and "after six days." Further, in addition to "trough level," the entire limitation "the trough level of the plasma FIX activity after each administration is at least 3 IU/dL after six days" received its own construction. D.I. 118.  Because these claim elements are not found in the asserted claims of the '475 Patent and the '091 Patent, dropping the '903 Patent from the case would mean the differences between these claims, including the Court's construction of "trough," would not need to be considered by the Court and jury in the context of infringement, validity, and damages.

Further, as highlighted in the table, claim 22 of the '903 Patent has a different structure than claim 24 of the '091 Patent and claim 19 of the '475 Patent.  In this regard, claim 22 of the '903 Patent recites "95% identical," claim 24 of the '091 Patent recites "90% identical," and claim 19 of the '475 Patent recites "identical."  By dropping the '903 Patent from the case, this difference between these claims would not need to be considered by the Court and jury in the context of infringement, validity, and damages.

Accordingly, given these differences between the asserted claims of the '903 Patent and the asserted claims of the '091 Patent and '475 Patent, dropping the '903 Patent from the case will simplify the trial.

## B. Dismissal of Bioverativ's Infringement Claims of the '903 Patent is Warranted

Under Fed. R. Civ. P. 41(a)(2), "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."  In this Court, "[a] motion for voluntary dismissal without prejudice should be granted unless the dismissal will result in legal prejudice to the defendant."  *SCVNGR, Inc. v. DailyGobble, Inc.*, C.A. 17-cv-1857-RGA, 2018 WL 4725289, at *1 (D. Del. Oct. 2, 2018).  The decision to grant a motion to dismiss without prejudice is within the Court's discretion.  *Ockert v. Union Barge Line Corp.*, 190 F.2d 303, 304 (3d Cir. 1951).

8

In cases involving multiple patents, this Court has entered stipulations of dismissal of infringement claims of one of the asserted patents.  *E.g.*, *Orexigen Therapeutics, Inc. v. Actavis Labs. FL, Inc.*, C.A. 15-451-RGA, D.I. 182 (D. Del. Aug. 31, 2017) (Ex. 6).  In another multiple patent-case, a court in this District dismissed infringement claims of one of the asserted patents over the objection of the defendant.  *Improved Search LLC v. Microsoft Corp.*, C.A. 16-650-JFB, D.I. 102 (D. Del. May 28, 2019) (Ex. 7).  Dismissal is appropriate here as well.  D.I. 302, 1 ("I take it the '903 patent is not going to be at issue at the trial.").

Due to Bioverativ's executed covenant not to sue on the '903 Patent, the Court should dismiss Bioverativ's claims of infringement of the '903 Patent (Count III) without prejudice.[2] CSL has already agreed in principal to dismiss the '903 Patent from the case.  *See* Exs. 2-A, 2-B, 2-C, 2-D, 3-A, 3-B, 4-A, 4-B, and 4-C.  CSL's attempt to get a free pass at trial on certain evidentiary issues – such as the relevance of evidence related to the '903 Patent – without the '903 Patent being at issue does not need to be part of the dismissal of the '903 Patent.

There is no legal prejudice to CSL in dismissing the infringement claims of the '903 Patent from the case.  The covenant not to sue on the '903 Patent ends Bioverativ's infringement claims of the '903 Patent against CSL and assures CSL that Bioverativ will not re-assert them against CSL. Ex. 1, Covenant, ¶ 1.  Further, none of the four factors considered by courts when evaluating potential legal prejudice show there is any legal prejudice to CSL.  *SCVNGR*, 2018

_____

[2] In making the request for dismissal without prejudice, Bioverativ seeks a dismissal that has no preclusive effect on the '091 Patent and '475 Patent in this case or on the asserted patents in *Bioverativ II*.  *See Papera v. Pa. Quarried Bluestone Co.*, 948 F.3d 607, 610-611 (3d Cir. 2020); *Newman v. Bayliner Marine Corp.*, 166 F.3d 343, at *1 (9th Cir. 1998) (unpublished) ("Neither res judicata nor collateral estoppel applies in an action where plaintiff dismisses one claim of a multi-count complaint and proceeds on another").  The lack of preclusive effect as to other patents is typical in stipulations of dismissal (*see* Ex. 6, ¶ 3) and is not a point of disagreement between the parties.  *Compare* Ex. 2-D, ¶ 3, *with* and 4-C, ¶ 3.

WL 4725289, at *1 ("1) any excessive and duplicative expense of a second litigation; 2) the effort and expense incurred by a defendant in preparing for trial; 3) the extent to which the pending litigation has progressed; and 4) the claimant's diligence in moving to dismiss.") (quotation omitted).

First, due to the covenant not to sue, there will be no second litigation involving the '903 Patent.  Second, the case is ready for trial—except for this motion, the Court has disposed of all motions the parties have filed on the '903 Patent and therefore CSL has not invested any resources in undecided motions on the '903 Patent.  Third, dismissal of the '903 Patent from the case and proceeding to trial on the '091 Patent and '475 Patent would conserve judicial and party resources as fewer claims and related issues would necessarily be presented at trial.  As Bioverativ has sought to drop the '903 Patent from the case since February 2020 (*see, e.g.*, Ex. 2-A) and the pandemic has delayed the trial to a date to be determined, CSL has had more than enough time to prepare for a reduced trial on only the '091 Patent and the '475 Patent.

Accordingly, because the dismissal would not result in legal prejudice to CSL, Bioverativ's claims of infringement of the '903 Patent (Count III) should be dismissed without prejudice.

## C. In the Alternative, Leave Should Be Granted to Amend the Complaint to Remove the Infringement Claims of the '903 Patent

Some courts have determined that Rule 15, and not Rule 41, governs removal of one claim from a multi-claim case.  *In re Amp'd Mobile, Inc.*, 395 B.R. 582, 585-86 (Bankr. D. Del. 2008); *U.S. v. Kushner*, C.A. 17-2372, 2018 WL 2230552, *1 (D.N.J. May 15, 2008).[3]  As noted by the Federal Circuit, however, "[t]he true state of affairs is more critical than mere labels" and

---

[3] *But see Young v. Wilky Carrier Corp.*, 150 F.2d 764, 764 (3d Cir. 1945) (affirming dismissal of less than entire case under Rule 41(a)(2)).

"[t]he fact that a voluntary dismissal of a claim under Rule 41(a) is properly labeled an amendment under Rule 15 is a technical, not substantive distinction." *Nilssen v. Motorola, Inc.*, 203 F.3d 782, 784 (Fed. Cir. 2000) (footnote omitted); *see also Wakefield v. N. Telecom, Inc.*, 769 F.2d 109, 114 (2d Cir. 1985) ("Whether we view the question as arising under Fed. R. Civ. P. 15 or 41(a)(2), the trial court has considerable discretion in deciding whether to allow withdrawal of a claim without prejudice." (footnote omitted)).

In the alternative, Bioverativ's request to remove its infringement claims of the '903 Patent from the case is also warranted under Rules 15 and 16.

### 1. Rule 15 and Related Authority Strongly Supports Amending the Complaint to Remove the Infringement Claims of the '903 Patent

Under Fed. R. Civ. P. 15(a)(2), "a party may amend its pleading only with the opposing party's written consent" or "the court's leave." The Supreme Court has explained that leave should be "freely given" unless there is evidence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Further, the Third Circuit has explained that district courts should use "strong liberality in considering whether to grant leave to amend." *Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1990) (internal quotation omitted). The decision to grant leave to file an amended complaint is within the Court's discretion. *Foman*, 371 U.S. at 182.

The reasons supporting dismissal of the infringement claims of the '903 Patent without prejudice similarly support granting Bioverativ leave to amend the complaint to remove the infringement claims of the '903 Patent (Count III). First, Bioverativ has not delayed, much less unduly delayed, in seeking to remove the infringement claims of the '903 Patent from the case.

11

To the contrary, Bioverativ has sought to drop the '903 Patent for over five months.  Any delay has been due to CSL's efforts to place conditions to dropping the '903 Patent from the case. Second, Bioverativ does not seek to remove the infringement claims of the '903 Patent in bad faith or for purposes of delay.  To the contrary, Bioverativ seeks to streamline the issues and simplify the jury trial in good faith, which serves judicial economy.[4]

Further, CSL will not be unduly prejudiced by the removal of the infringement claims of the '903 Patent.  To oppose Bioverativ's amendment, CSL "bears the burden of proving that actual prejudice" will result from it.  *Pegasus Dev. Corp. v. DirectTV, Inc.*, 00-CV-1020-GMS, 2002 WL 598457, at *2 (D. Del. Apr. 18, 2002).  To meet that burden, CSL must establish "it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the . . . amendments been timely." *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989) (quotation omitted).  CSL cannot establish undue prejudice.

Again, the covenant not to sue on the '903 Patent ends Bioverativ's infringement claims of the '903 Patent against CSL and provides that Bioverativ will not re-assert them against CSL. Ex. 1.  In the face of the covenant not to sue, CSL cannot show that it is unfairly disadvantaged or deprived of an opportunity to present admissible facts and evidence at trial on the '091 Patent and '475 Patent.  *Infra* IV.D.

Accordingly, the Court should grant Bioverativ leave to amend the complaint to remove the claims of infringement of the '903 Patent (Count III).[5]

---

[4] To the extent the futility factor applies to an amendment to remove a claim, amending the complaint to remove the infringement claims of the '903 Patent is not futile for at least the reason that the trial would proceed on the '091 Patent and '475 Patent.

[5] To the extent the Court grants Bioverativ's motion under Rule 15, Bioverativ is ready to file an amended complaint that deletes Count III.  As with Bioverativ's requested dismissal without prejudice of its infringement claims of the '903 Patent, Bioverativ's requested amendment would

### 2.   *Pursuant to Rule 16, Good Cause Exists to Modify the Case Schedule*

Motions for leave to amend after a scheduling order deadline for amendments must comply with Rule 16(b).  *Stored Value Solutions, Inc. v. Card Activation Techs., Inc.*, 796 F. Supp. 2d 520, 542 (D. Del. 2011).  Under Fed. R. Civ. P. 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent."  Good cause in this context requires "the movant to demonstrate that, despite diligence, the proposed claims could not have been reasonably sought in a timely manner."  *Venetec Int'l., Inc. v. Nexus Med., LLC*, 541 F. Supp. 2d 612, 618 (D. Del. 2008).  Good cause "hinges on diligence of the movant and not on prejudice to the non-moving party."  *Id.*  The decision to modify the case schedule to permit an amendment is within the Court's discretion. *Stored Value Solutions*, 796 F. Supp. 2d at 542.

Pursuant to the original Scheduling Order, the general deadline to file amended pleadings was July 26, 2018.  D.I. 31 and June 20, 2018 Order.  Here, good cause exists to modify the case schedule to permit Bioverativ to amend its complaint to remove the infringement claims of the '903 Patent. Because dispositive motions were not due until November 1, 2020, Bioverativ could not make the determination to streamline the issues and simply the trial by dropping the '903 Patent by the July 2018 deadline to file amended pleadings.  Bioverativ has diligently sought to drop the '903 Patent from the case and has done so for over five months.  *Supra* III.

Accordingly, because Bioverativ could not make the determination to streamline the issues and simplify the trial by dropping the '903 Patent until after the July 2018 deadline, and Bioverativ has diligently sought to do so, good cause exists to modify the case schedule to permit Bioverativ to amend the complaint to remove the infringement claims of the '903 Patent.

---

not have a preclusive effect on the '091 Patent and '475 Patent in this action or on the asserted patents in *Bioverativ II*.  *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 690 (9th Cir. 2011) ("It is axiomatic that prejudice does not attach to a claim that is properly dropped from a complaint under Rule 15(a) prior to final judgment.").

**D.  CSL's Counterclaims Based on the '903 Patent Should Be Dismissed Because There is No Longer a Case or Controversy to Confer Subject Matter Jurisdiction**

Under Fed. R. Civ. P. 12(b)(1), a party may move to dismiss a counterclaim for lack of subject matter jurisdiction.  The party asserting subject matter jurisdiction has the ultimate burden of proving its existence.  *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015).[6]

For a declaratory judgment claim, there must be a continual "substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quotation omitted).  A claim becomes moot and therefore lacks a continued case or controversy, "when the issues presented are no longer live."  *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quotation omitted).

In *Already*, the Supreme Court found that Nike's covenant not to sue mooted Already's counterclaim for a declaratory judgment of trademark invalidity.  *Id.* at 95.  The Supreme Court explained that Nike's covenant had "broad language," that Nike had met its burden to show the covenant encompassed all "allegedly unlawful conduct," and Already had not met its burden to show that "it engages in or has sufficiently concrete plans to engage in activities not covered by the covenant."  *Id.* at 94-95.

Federal Circuit case law is consistent with *Already* in holding that a covenant not to sue can moot a counterclaim for a declaration of patent invalidity.  *Benitec Australia, LTD. v. Nucleonics, Inc.*, 495 F.3d 1340, 1348-49 (Fed. Cir. 2007); *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1059-60 (Fed. Cir. 1995), *abrogated on other grounds by MedImmune*, 549 U.S. at 127.  As in *Already*, the Federal Circuit agrees that the burden is on declaratory judgment plaintiffs, like CSL, to present evidence of more than speculative or

---

[6] Lack of subject matter jurisdiction can be raised at any time.  Fed. R. Civ. P. 12(h)(3).

hypothetical plans to make potentially infringing products not covered by the covenant. *Benitec*, 495 F.3d at 1348-49; *Super Sack*, 57 F.3d at 1059-60.

Courts in this District regularly dismiss counterclaims for a declaratory judgment of invalidity based on a covenant not to sue. *E.g., Merck & Co., Inc. v. Watson Labs., Inc.*, C.A. 05-658-GMS, 2006 WL 1537375, at *1 (D. Del. June 2, 2006); *Matsushita Battery Indus. Co. v. Energy Conversion Devices, Inc.*, C.A. No. 96-101-SLR, 1997 WL 811563, at *7 (D. Del. Dec. 23, 1997). A court in this District has also dismissed a counterclaim for a declaratory of unenforceability based on a covenant not to sue. *Evonik Degussa GmbH v. Materiel Inc.*, C.A. 09-cv-636-NLH, 2016 WL 1367735, at *1 (D. Del. Apr. 6, 2016). Dismissal of CSL's counterclaims here is appropriate as well.

Bioverativ's requested dismissal, or in the alternative requested amendment, of its infringement claims of the '903 Patent and covenant not to sue would remove any actual case or controversy concerning CSL's counterclaims based on the '903 Patent. CSL's counterclaims of invalidity, noninfringement, and unenforceability of the '903 Patent (Third, Sixth, and Seventh Counterclaims) are moot and therefore should be dismissed without prejudice.[7]

Bioverativ's covenant not to sue on the '903 Patent is consistent with the covenant not to sue in *Already* that the Supreme Court concluded mooted the counterclaim there at issue. Paragraph 1 of Bioverativ's covenant is based on the *Already* covenant as quoted by the Supreme Court in its decision:

---

[7] CSL's Seventh Counterclaim is for a declaratory of unenforceability of the '091 Patent, '475 Patent, and '903 Patent. D.I. 18, ¶¶ 139-163. In this motion, Bioverativ only seeks dismissal of the Seventh Counterclaim based on the '903 Patent.

| Bioverativ's covenant not to sue | *Already* covenant not to sue |
|---|---|
| Bioverativ Inc., Bioverativ Therapeutics Inc., and Bioverativ U.S. LLC each unconditionally and irrevocably covenant to refrain from making any claim(s) or demand(s) against CSL Behring LLC, CSL Behring GmbH, and CSL Behring Lengnau AG or any of their related business entities, including distributors and employees of such entities, and all customers on account of any possible cause of action based on patent infringement of the '903 Patent based on Idelvion® [Coagulation Factor IX (Recombinant), Albumin Fusion Protein] accused of infringement in *Bioverativ I* and *Bioverativ II*, and any Coagulation Factor IX (Recombinant), Albumin Fusion Protein that is no more than colorably different therefrom, before or after the Effective Date of this Covenant.[8] | "[Nike] unconditionally and irrevocably covenants to refrain from making *any* claim(s) or demand(s) ... against Already or *any* of its ... related business entities ... [including] distributors ... and employees of such entities and *all* customers ... on account of any *possible* cause of action based on or involving trademark infringement, unfair competition, or dilution, under state or federal law ... relating to the NIKE Mark based on the appearance of *any* of Already's current and/or previous footwear product designs, and *any* colorable imitations thereof, regardless of whether that footwear is produced ... or otherwise used in commerce before or after the Effective Date of this Covenant." *Already*, 568 U.S. at 93 (alterations and emphases in original) |

Because Bioverativ's covenant not to sue on the '903 Patent is substantively similar to the *Already* covenant not to sue and Bioverativ's covenant is broad and unequivocal, Bioverativ has met its burden to show that "the covenant encompasses all of [CSL's] allegedly unlawful conduct." *Id.* at 94.  Bioverativ's covenant insulates CSL, related business entities, successors in interest to CSL, and all customers from litigation based on patent infringement of the '903 Patent based on Idelvion® and any Coagulation Factor IX (Recombinant) Albumin Fusion Protein that is no more than colorably different from Idelvion®.  Ex. 1, Covenant, ¶¶ 1, 6.  If anything, CSL's attempt to add conditions related to the handling of evidence related to the '903 Patent to the covenant and stipulation of dismissal would be contrary to *Already*.

---

[8] The Federal Circuit applies the colorable differences test to determine whether a new product is so different from an adjudged infringing product that it warrants a new infringement trial.  *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 882-83 (Fed. Cir. 2011) (en banc).

16

In the face of Bioverativ's covenant not to sue on the '903 Patent, CSL cannot establish a basis for this Court to maintain subject matter jurisdiction over CSL's counterclaims for invalidity, noninfringement, and unenforceability of the '903 Patent.  It is CSL's burden to show that it has specific plans to create a new product more than colorably different from Idelvion® that would arguably infringe the '903 Patent.  *Already*, 568 U.S. at 94.  Bioverativ submits that CSL cannot meet that burden.

Accordingly, because the covenant not to sue on the '903 Patent moots CSL's counterclaims based on the '903 Patent (Third, Sixth, and Seventh Counterclaims), these counterclaims should be dismissed without prejudice.

**E.  Admissibility of Evidence and Argument Should Be Decided Closer to or at Trial**

CSL's apparent desire to introduce '903 Patent-related evidence and argument at trial even after that patent is dropped from the case is not a basis to deny Bioverativ's motion.  CSL's insistence on introducing such evidence and argument has no bearing on Bioverativ's covenant not to sue on the '903 Patent and the lack of a case or controversy as to CSL's counterclaims based on the '903 Patent.  Issues regarding the admissibility of this evidence by CSL should be decided close to or at trial.

In any case, CSL's position that it should have unfettered ability to present '903 Patent-related evidence and argument even after that patent is dropped from the case would be an end run.  For example, CSL's revisions to the stipulation include that, "Neither party shall rely on [the removal of the '903 Patent from the case] as grounds to object to any evidence in this Action."  Ex. 4-C, ¶ 6.  Such language is overly broad and unnecessary to be part of the dismissal of the '903 Patent.  Substantively, the relevance of an unasserted patent (the '903 Patent) during trial of the asserted patents (i.e., the '475 Patent and the '091 Patent) should be allowed to be challenged.  Instead of simplifying the jury trial, CSL would confuse and complicate the trial by

introducing '903 Patent evidence and argument even though that patent is not at issue.  After the '903 Patent is dropped from the case, '903 Patent-related evidence and argument would be irrelevant or unduly prejudicial in the trial on the '091 Patent and '475 Patent.  Fed. R. Evid. 402, 403.

CSL may argue that it would be prejudiced if it is not permitted to present '903 Patent evidence and argument at trial because such evidence and argument overlaps with the '091 Patent and '475 Patent.  Again, that is not a reason to deny Bioverativ's motion.  Any overlap in CSL's evidence and argument has no bearing on Bioverativ's covenant not to sue on the '903 Patent and the lack of a case or controversy as to CSL's counterclaims based on the '903 Patent. Any dispute as to the relevance of evidence related to the '903 Patent can be properly addressed pre-trial or at trial – not in the covenant not to sue.  As Bioverativ has sought to drop the '903 Patent from the case since February 2020 and the pandemic has delayed the trial to a date to be determined, CSL has more than enough time to prepare for a reduced trial on only the '091 Patent and the '475 Patent.

The admissibility of any specific evidence and argument regarding the '903 Patent that CSL seeks to introduce can be decided at the pretrial conference or at trial.

## V.      CONCLUSION

For the foregoing reasons, Bioverativ respectfully requests that the Court grant Bioverativ's motion to dismiss without prejudice, or in the alternative to amend the complaint to remove, its claims of infringement of the '903 Patent, and to dismiss CSL's counterclaims based on the '903 Patent without prejudice.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*

OF COUNSEL:

_____

McDONNELL BOEHNEN HULBERT &
  BERGHOFF LLP
Paul H. Berghoff
Alison J. Baldwin
Joshua R. Rich
James C. Gumina
Sarah E. Fendrick, Ph.D.
James L. Lovsin
Nicole E. Grimm
Daniel F. Gelwicks
300 South Wacker Drive
Chicago, IL 60606
(312) 913-0001

September 10, 2020

Thomas C. Grimm (#1098)
Jeremy A. Tigan (#5239)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
tgrimm@mnat.com
jtigan@mnat.com

*Attorneys for Plaintiffs Bioverativ Inc.,*
*Bioverativ Therapeutics Inc., and*
*Bioverativ U.S. LLC*

19

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered participants.

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on September 10, 2020, upon the following individuals in the manner indicated:

Frederick L. Cottrell, III                                    *BY E-MAIL*
Christine D. Haynes
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE  19801

Lisa J. Pirozzolo                                             *BY E-MAIL*
Kevin S. Prussia
Emily Whelan
Kate Saxton
Michaela P. Sewall
Annaleigh Curtis
Kelli J. Powell
Harry Hanson
Rauvin A. Johl
Joseph J. Mueller
WILMER CUTLER PICKERING HALE AND DOOR
60 State Street
Boston, MA  02109

Robert M. Gavin                                               *BY E-MAIL*
WILMER CUTLER PICKERING HALE AND DOOR
950 Page Mill Road
Palo Alto, California 94304

Christopher M. Cherry                                         *BY E-MAIL*
WILMER CUTLER PICKERING HALE AND DOOR
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006

*/s/ Jeremy A. Tigan*
_____
Jeremy A. Tigan (#5239)