**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

BIOVERATIV INC., BIOVERATIV
THERAPEUTICS INC. AND
BIOVERATIV U.S. LLC,

                    Plaintiffs,

       v.

CSL BEHRING LLC, CSL BEHRING
GMBH, and CSL BEHRING LENGNAU
AG,

                    Defendants.

C.A. No. 17-914-RGA

**PUBLIC VERSION**

**CSL'S ANSWERING BRIEF IN OPPOSITION TO BIOVERATIV'S
MOTION TO DISMISS (D.I. 318, 319) AND OPENING BRIEF IN
SUPPORT OF CSL'S CROSS-MOTION TO DISMISS WITH PREJUDICE
BIOVERATIV'S COUNT III RELATING TO U.S. PATENT NO. 9,629,903**

OF COUNSEL:

Lisa J. Pirozzolo
Kevin S. Prussia
Emily Whelan
Kelli J. Powell
WILMER CUTLER PICKERING
   HALE AND DORR
60 State Street
Boston, MA 02109
(617) 526-6000

Dated:  September 24, 2020

Frederick L. Cottrell, III (#2555)
Christine D. Haynes (#4697)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
haynes@rlf.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

Page(s)

I.  INTRODUCTION ........................................................................................................1

II.  PROCEDURAL BACKGROUND.............................................................................1

    A.  Bioverativ Aggressively Pursued Its '903 Patent Infringement Claims in Both the ITC and This Court .........................................................................................1

    B.  Bioverativ Sought to Withdraw the '903 Patent Claims on the Eve of the First Scheduled Trial and After Asserting Three More Related Patents Against CSL .................................................................................3

III.  ARGUMENT ..............................................................................................................4

    A.  Bioverativ's Claims on the '903 Patent Must Be Dismissed *With Prejudice* ....................................................................................................4

        1.  Dismissal With Prejudice is Appropriate Under Rule 41 Given the Advanced Stage of the Case........................................................4

        2.  Leave to Amend is Not Appropriate Under Rule 15 or Rule 16 Given Bioverativ's Delay .........................................................6

    B.  Bioverativ Must Provide a Sufficiently Broad Covenant Not to Sue to Eliminate the Court's Jurisdiction Over CSL's Counterclaims..........................8

    C.  Bioverativ's Assertions About Evidence at Trial Are a Red Herring...................14

    D.  CSL's Proposed Resolution .................................................................................15

IV.  CONCLUSION..........................................................................................................15

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Already, LLC v. Nike, Inc.*,
　568 U.S. 85 (2013) .................................................................................................. *passim*

*ArcelorMittal v. AK Steel Corp.*,
　856 F.3d 1365 (Fed. Cir. 2017)................................................................................9

*Bechtel v. Robinson*.
　886 F.2d 644 (3d Cir. 1989).....................................................................................8

*Bristol-Myers Squibb Co. v. Mylan Pharms. Inc.*,
　No. 09-651-LPS, 2011 WL 13371929 (D. Del. July 18, 2011)...........................9, 10

*Evertz Microsystems Ltd. v. Lawo Inc.*,
　No. 19-302-MN, 2020 WL 4673829 (D. Del. Aug. 12, 2020) .............................4, 7

*Evonik Degussa GmbH v. Materia Inc.*,
　No. 09-636-NLH, 2016 WL 1367735 (D. Del. Apr. 6, 2016) ................................15

*Gevo, Inc. v. Butamax Advanced Biofuels LLC*,
　No. 12-301-SLR, 2013 WL 6627960 (D. Del. Dec. 16, 2013)........................12, 13

*Hayden v. Westfield Ins.*,
　586 F. App'x 835 (3d Cir. 2014)..............................................................................5

*Helios Software, LLC v. SpectorSoft Corp.*,
　No. 12-81-LPS, 2015 WL 3622399 (D. Del. June 5, 2015) .....................................4

*Improved Search LLC v. Microsoft Corp.*,
　No. 16-650-JFB, D.I. 102 (D. Del. May 28, 2019)...................................................6

*MedImmune, Inc. v. Genentech, Inc.*,
　549 U.S. 118 (2007).............................................................................................8, 13

*Ockert v. Union Barge Line Corp.*,
　190 F.2d 303 (3d Cir. 1951).....................................................................................6

*Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*,
　556 F.3d 1294 (Fed. Cir. 2009).................................................................................9

*SCVNGR, Inc. v. DailyGobble, Inc*.,
　No. 17-1857-RGA, 2018 WL 4725289 (D. Del. Oct. 2, 2018) ............................5, 6

*Shoulder Innovations, LLC v. Ascension Orthopedics, Inc.*,
    No. 11-810-JEI, 2012 WL 2092379 (D. Del. June 8, 2012)...........................................5, 6, 13

*St. Clair Intell. Prop. Consultants v. Motorola Mobility LLC*,
    292 F.R.D. 162 (D. Del. 2013) ...................................................................................................4

*TiVo Inc. v. EchoStar Corp.*,
    646 F.3d 869 (Fed. Cir. 2011)..................................................................................................11

*Wi-LAN Inc. v. Sharp Elecs. Corp.*,
    No. 15-379-LPS, 2018 WL 914779 (D. Del. Feb. 15, 2018) ...................................................5

*In re XPO Logistics, Inc. Derivative Litig.*,
    No. 19-889-RGA, 2020 WL 3640047 (D. Del. July 6, 2020) ...................................................7

**Rules**

D. Del. LR 7.1.1 ..........................................................................................................................4

FRCP 15....................................................................................................................................6, 7

FRCP 16....................................................................................................................................6, 7

FRCP 41.................................................................................................................................4, 5, 7

# I.    INTRODUCTION

CSL agrees that this patent case can and should be simplified by the dismissal of claims and counterclaims related to U.S. Patent No. 9,629,903 (the "'903 patent"), which never should have been asserted against CSL at all.  The only dispute between the parties pertains to the terms of the dismissals and the sufficiency of the covenant not to sue offered to CSL by Bioverativ.

***First***, Bioverativ's '903 patent infringement claims clearly must be dismissed *with prejudice*, not without prejudice as Bioverativ has requested.  The cases upon which Bioverativ relies do not suggest otherwise, and it would clearly prejudice CSL to remain exposed to renewed litigation on the '903 patent after having defended against Bioverativ's claims for over three years.  Bioverativ's motion for dismissal of its '903 infringement claims without prejudice should be denied and CSL's cross-motion for dismissal of those claims with prejudice should be granted.

***Second***, in order to obtain dismissal of CSL's counterclaims of non-infringement, invalidity, and unenforceability of the '903 patent, Bioverativ must provide a covenant not to sue that clearly runs with the patent by binding its affiliates, such as Sanofi, and that covers any CSL product.  Its failure to agree to terms that would do so makes clear that a case or controversy remains between the parties.  Bioverativ's motion to dismiss CSL's counterclaims should therefore be denied.

# II.    PROCEDURAL BACKGROUND

## A.    Bioverativ Aggressively Pursued Its '903 Patent Infringement Claims in Both the ITC and This Court

The parties have been actively litigating the '903 patent for over three years.  In July 2017, Bioverativ asserted infringement of the '903 patent and two other patents in the same

family in this district court case ("Bioverativ I") and in the International Trade Commission (USITC Inv. No. 337-TA-1066). This case was stayed for several months as Bioverativ pursued a request for an exclusion order in the ITC. (D.I. 9.) However, following an adverse claim construction decision, in which the Administrative Law Judge found the '903 patent claims "nonsensical" (Curtis Decl., Ex. 8 at 39-40, ITC Order No. 15, Public Version), Bioverativ unilaterally moved to withdraw its complaint and end the ITC investigation. (*See* D.I. 13.) Despite that adverse ruling, once the stay of this case was lifted in April 2018, Bioverativ continued to assert the '903 patent in this Court through claim construction, fact and expert discovery, and summary judgment.

In this litigation, CSL has consistently asserted that the '903 patent is not infringed, invalid, and unenforceable. For example, when Bioverativ continued to press its claims here after withdrawing the ITC complaint, CSL informed Bioverativ that the claims of the '903 patent "cannot be infringed, are likely invalid, and should have never been asserted to begin with." (Curtis Decl., Ex. 9 at 3, April 18, 2018 Ltr. from Prussia to Fiacco.) And although the Court did not agree with CSL's proposed claim construction, it did find that the '903 patent contained "a rare instance of 'surplusage'" (D.I. 118 at 13,) and requested at argument that Bioverativ report back about whether it had "a patent that has the same priority date that doesn't have the six days language, and otherwise has the same limitations," as the '903 patent (D.I. 109 at 49:16-18.) CSL also moved for summary judgment that the '903 patent was invalid for lack of written description and enablement. (*See* D.I. 210, 217.)

**B.      Bioverativ Sought to Withdraw the '903 Patent Claims on the Eve of the First Scheduled Trial and After Asserting Three More Related Patents Against CSL**

Bioverativ did not hint that it might drop the '903 patent until February 2020, when it sought to amend its complaint to add three newly-issued, related patents to this case.[1]  In its motion for leave to amend, Bioverativ noted for the first time that it was "open to dropping the '903 patent."  (D.I. 252 at 2.)  That was approximately seven weeks before the scheduled trial.[2]

Thereafter, the parties began exchanging documentation, including a stipulation of dismissal and later a covenant not to sue, to reflect Bioverativ's decision not to pursue its claims on the '903 patent.  On July 29, 2020, Bioverativ requested comments on the covenant.  (Curtis Decl., Ex. 12 at 3, Email Chain.)  After letting Bioverativ know that CSL needed more time to review the draft, CSL sent back comments on the covenant and stipulation on August 11, 2020.  (*Id.* at 1-2; D.I. 320-1, Exs. 4-B, 4-C.)  CSL's comments were aimed primarily at addressing two fundamental shortcomings of Bioverativ's draft covenant.  First, CSL made edits to ensure that the covenant would run with the patent and bind corporate affiliates of Bioverativ (like Sanofi).  (*See* D.I. 320-1, Ex. 4-B at Recitals, ¶ 5 (defining "Bioverativ Affiliate" as "any entity controlling, controlled by or under common control with [the Bioverativ plaintiffs]" and clarifying that the covenant would bind "any successor-in-interest to any rights, title and/or

---

[1] The Court denied Bioverativ's motion to amend.  (D.I. 264.)  Following that denial, Bioverativ filed a separate suit on the three new patents it sought to add to this case.  *See* C.A. No. 20-332-RGA ("Bioverativ II").

[2] Trial was originally scheduled to begin March 30, 2020.  (D.I. 287.)  Because of the COVID-19 pandemic, it was rescheduled for October 19, 2020.  (D.I. 301.)  The Court canceled the trial date again due to the pandemic at the joint request of the parties, and a new date has not been set as of this filing.  (D.I. 314, 315.)

3

interests in the '903 patent").)  Second, CSL made edits to ensure that the covenant would apply

to "any CSL Behring product."  (*Id.* at ¶ 1.)

Nearly a month later, on September 9, 2020—without discussion or explanation—

Bioverativ announced it had unilaterally rejected CSL's edits and executed a covenant not to sue

very similar to its prior draft.  (Curtis Decl., Ex. 12 at 1 (stating only that "Bioverativ does not

accept CSL's substantially re-written covenant not to sue and stipulation.").)  Bioverativ filed the

present motion—without notice—the next day.[3]

## III.   ARGUMENT

### A.   Bioverativ's Claims on the '903 Patent Must Be Dismissed *With Prejudice*

#### 1.   Dismissal With Prejudice is Appropriate Under Rule 41 Given the Advanced Stage of the Case

Bioverativ has asked for its claims on the '903 patent (Count III) to be dismissed ***without***

prejudice.  (*See* D.I. 318, 319.)  This is improper.  If Bioverativ's claims are to be dismissed on

the eve of trial after three years of litigation, they must be dismissed ***with*** prejudice.[4]  *See, e.g.*,

*Helios Software, LLC v. SpectorSoft Corp.*, No. 12-81-LPS, 2015 WL 3622399, at *4 (D. Del.

---

[3] Bioverativ's motion is premature.  Here, the parties agree in principle that Bioverativ's claims
and CSL's counterclaims on the '903 patent should be dismissed with the execution of an
appropriate covenant.  The parties were in the process of negotiating just that when Bioverativ
made its motion.  *Cf.* D. Del. LR 7.1.1. (requiring moving party to make a "reasonable effort" to
reach agreement with the opposing party before filing nondispositive motions); *St. Clair Intell.
Prop. Consultants v. Motorola Mobility LLC*, 292 F.R.D. 162, 165 n.2 (D. Del. 2013)
(expressing concern at movant's failure to meet and confer despite filing arguably dispositive
motion, as the parties could have reached a resolution without court intervention); *Evertz
Microsystems Ltd. v. Lawo Inc.*, No. 19-302-MN, 2020 WL 4673829, at *1 (D. Del. Aug. 12,
2020) ("A motion for leave to amend is a non-dispositive motion.").

[4] Bioverativ suggests that it is requesting dismissal without prejudice so that the dismissal "has
no preclusive effect on the [other patents]" it is asserting.  (Br. at 9, n.2.)  Dismissal with
prejudice of the claims of the '903 patent would preclude the *'903 patent* from being relitigated,
not the other patents-in-suit.

June 5, 2015) (dismissing infringement claims with prejudice where patentee provided a unilaterally-executed covenant not to sue after more than three years of litigation and less than two months before trial).  This was the outcome CSL proposed—but Bioverativ rejected—in its most recent edits to the parties' stipulation.  (*See* D.I. 320-1, Ex. 4-C at ¶¶ 1-2.)

In determining whether a litigant may voluntarily dismiss claims under Rule 41(a)(2) and whether that dismissal should be with or without prejudice, this Court considers (1) the effort and expense of a second litigation; (2) the effort and expense incurred by a defendant in preparing for trial; (3) the extent to which the pending litigation has progressed; and (4) the claimant's diligence in moving to dismiss.  *SCVNGR, Inc. v. DailyGobble, Inc.*, No. 17-1857-RGA, 2018 WL 4725289, at *1 (D. Del. Oct. 2, 2018).  "Where appropriate, the Court can enter a dismissal with prejudice even if the plaintiff files its Rule 41 motion specifically seeking a dismissal without prejudice."  *Wi-LAN Inc. v. Sharp Elecs. Corp.*, No. 15-379-LPS, 2018 WL 914779, at *1 (D. Del. Feb. 15, 2018) (dismissing claims with prejudice).

Here, the factors favor dismissal with prejudice.  CSL has endured over three years of litigation on the '903 patent, in two different venues and at significant expense.  The parties conducted fact and expert discovery on the patent, and the case is ready for trial.  This is not a situation where Bioverativ dismissed claims shortly after filing suit; waiting three years to dismiss a patent after it has been nearly fully litigated is not diligent.  *Hayden v. Westfield Ins.*, 586 F. App'x 835, 843 (3d Cir. 2014) (holding dismissal without prejudice was not appropriate where the plaintiff moved to dismiss seventeen months after the start of litigation and six months after the close of discovery).  CSL will be substantially prejudiced by unwarranted exposure to future litigation if Bioverativ is now allowed to dismiss its claims on the '903 patent without prejudice.  *Shoulder Innovations, LLC v. Ascension Orthopedics, Inc.*, No. 11-810-JEI, 2012 WL

5

2092379, at *1 (D. Del. June 8, 2012) ("The underlying purpose of the rule is to prevent voluntary dismissals which unfairly impact the defendant.").

Notably, Bioverativ does not cite a single case to support the proposition that a litigant may dismiss claims on the eve of trial without prejudice.  Instead, even the cases upon which Bioverativ relies support CSL's position: claims that have been litigated through this stage should be dismissed with prejudice.  In *SCVNGR*, for example, this Court dismissed a state law claim without prejudice only where discovery had not yet closed, specifically noting "[t]his is not a case where the Plaintiff has filed a motion to dismiss on the eve of trial."  2018 WL 4725289, at *2.  *See also Improved Search LLC v. Microsoft Corp.*, No. 16-650-JFB, D.I. 102, at *2 (D. Del. May 28, 2019) (*see* D.I. 320-1, Ex. 7) (dismissing claims after claim construction).  Here, of course, Bioverativ's motion comes precisely on the eve of trial.  And in *Ockert*, which Bioverativ cites for the proposition that dismissal with prejudice is within the Court's discretion, the Third Circuit noted that dismissal is favored at early stages of a case, but it becomes "an increasingly burdensome matter to one's opponent if a case has been prepared, trial date set and the party and his witnesses on hand and ready for trial."  *Ockert v. Union Barge Line Corp.*, 190 F.2d 303, 304 (3d Cir. 1951).  The Third Circuit's observation in *Ockert* accurately describes the posture of this case today.  Accordingly, dismissal with prejudice is appropriate.

2. **Leave to Amend is Not Appropriate Under Rule 15 or Rule 16 Given Bioverativ's Delay**

Bioverativ should not be permitted to use Rule 15 or 16 as a mechanism to shortcut the "with prejudice" effect of dismissal by amending the Complaint to remove the '903 patent from the case.  Under Rule 15, amendment is inappropriate where there is "undue delay, bad faith or dilatory motive" on the part of the moving party.  *In re XPO Logistics, Inc. Deriv. Litig.*, No. 19-

889-RGA, 2020 WL 3640047, at *2 (D. Del. July 6, 2020) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Likewise, amendment after the scheduling order is set under Rule 16 is not permitted where the movant fails to show "good cause" by, for example, exhibiting a lack of diligence in seeking the amendment.  *See, e.g.*, *Evertz*, 2020 WL 4673829, at *2 ("Good cause turns on the diligence of the movant.") (citations and internal quotations omitted); *Pharmacy Corp. of Am./Askari Consol. Litig.*, No. 16-1123-RGA, 2020 WL 3060366, at *3 (D. Del. June 9, 2020) (denying motion to amend pleadings for lack of diligence after entry of pre-trial order). Bioverativ has not met either standard.

Here, the deadline for amending pleadings—July 2018 (D.I. 31)—has long since passed. Bioverativ has been on notice since at least the time of CSL's April 2018 *Octane Fitness* letter of the significant deficiencies in Bioverativ's assertion of the '903 patent.  (*See supra* Section II.A.) Further, during the *Markman* hearing in February 2019, the Court explicitly asked Bioverativ whether it had other patents that it could substitute in for the '903 patent.  (*See supra* Section II.A.)  Bioverativ nevertheless persisted in litigating the '903 patent for over a year after that hearing.  Such conduct exemplifies delay, not diligence.

In addition, Bioverativ's motion for leave to amend under either Rule 15 or 16 appears designed to avoid the preclusive effect of a dismissal with prejudice under Rule 41—thereby reserving for itself (or, as discussed below, its controlling affiliate Sanofi) the ability to assert the '903 patent against CSL ***again*** in the future.  That is not a proper use of Rule 15 or 16 and would undermine Bioverativ's stated intention to conserve judicial resources and streamline the parties' disputes.  Allowing a plaintiff to amend its complaint on the eve of trial to remove a patent that has been thoroughly litigated, while retaining the right to reassert the same patent against the defendant in the future, does not promote judicial efficiency.  Neither does it constitute good

cause.  Notably, in no case cited by Bioverativ did a court endorse the strategy it seeks to achieve here—avoiding a dismissal with prejudice by virtue of a late amendment on the eve of trial.[5]

### B.   Bioverativ Must Provide a Sufficiently Broad Covenant Not to Sue to Eliminate the Court's Jurisdiction Over CSL's Counterclaims

In order to obtain dismissal of CSL's counterclaims for non-infringement, invalidity, and unenforceability of the '903 patent[6], Bioverativ's infringement claims must be dismissed with prejudice, and Bioverativ must also provide CSL with a covenant not to sue that effectively eliminates any case or controversy with regard to that patent.  Bioverativ's refusal to agree to the terms CSL proposed, for example, to make clear that the covenant would run with the patent and bind Bioverativ's parent company Sanofi, and its insistence upon dismissing its '903 infringement claims "without prejudice" leave CSL at risk of repeat litigation on the '903 patent and are thus insufficient to eliminate the case or controversy between the parties.

A declaratory judgment action satisfies the case-or-controversy requirement under Article III if the facts alleged, "under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant" the issuance of a declaratory judgment.  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citations omitted).  Where a covenant not to sue is involved, the burden is on the party providing the covenant "to show that it 'could not reasonably be expected' to resume its

---

[5] In *Pegasus Dev. Corp. v. DIRECTV, Inc.*, the Court noted that there would be no prejudice to defendant in light of the stage of the proceedings, where *Markman* briefing had yet to take place and there were several months of discovery remaining.  No. 00-1020-GMS, 2002 WL 598457, at *3 (D. Del. Apr. 18, 2002).  Similarly, the case was "still in the initial stages of discovery" in *Bechtel v. Robinson*.  886 F.2d 644, 652 (3d Cir. 1989).

[6] CSL's unenforceability counterclaim (Seventh Counterclaim) goes to all three patents asserted by Bioverativ in this action.  Bioverativ's motion only seeks to dismiss the counterclaim as to the '903 patent.  D.I. 319 at 15, n.7.

enforcement efforts." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 92 (2013) (citations omitted); *see also ArcelorMittal v. AK Steel Corp.*, 856 F.3d 1365, 1370 (Fed. Cir. 2017) (requiring patentee to show "that the covenant enforceably extinguished any real controversy between the parties related to infringement of the [patent-in-suit].").

The Court must evaluate the covenant in context to determine if it is "sufficiently broad and definite" to divest the court of jurisdiction. *Bristol-Myers Squibb Co. v. Mylan Pharms. Inc.*, No. 09-651-LPS, 2011 WL 13371929, at *4 (D. Del. July 18, 2011); s*ee also Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294, 1297 (Fed. Cir. 2009) ("Whether a covenant not to sue will divest the trial court of jurisdiction depends on what is covered by the covenant."). Where a covenant is conditional, qualified, or otherwise uncertain, the threat of another lawsuit looms. *See, e.g.*, *ArcelorMittal*, 856 F.3d at 1370-71 (finding controversy was not moot because patentee's assurance not to sue was qualified and conditional); *Bristol-Myers Squibb*, 2011 WL 13371929, at *7 ("While BMS' covenant goes a long way toward providing Mylan with that certainty [that it will not face future infringement claims], it does not go quite far enough."). Bioverativ's proffered covenant is deficient in two ways.

***First***, Bioverativ's covenant prevents only the three Bioverativ entities who are plaintiffs in this suit and any successor-in-interest to those three entities from suing CSL on the '903 Patent. (D.I. 320-1, Ex. 1 at Recitals, ¶¶ 1, 5.) It notably does not apply to any other entity—such as Sanofi, Bioverativ's parent company, which wholly owns each of the named Bioverativ entities and is controlling the present litigation. *See* D.I. 15 (identifying Sanofi as the parent company of each plaintiff). Nor does it unambiguously purport to bind any future owner or other party with an interest in the '903 patent, such as a licensee. CSL sought to correct this with edits to Bioverativ's proposed covenant that would have made it "binding on any successor in interest

9

to Bioverativ, as well as any successor-in-interest to any rights, title and/or interests in the '903 patent."  (D.I. 320-1, Ex. 4-B at ¶ 5.)  CSL also sought clarification that the covenant was made on behalf of "any entity controlling, controlled by or under common control with [the Bioverativ plaintiffs]."  (*Id.* at Recitals.)  Bioverativ rejected that language, leaving CSL to surmise that Bioverativ disagrees with those terms.  (Curtis Decl., Ex. 12 at 1.)

Bioverativ's refusal to accept CSL's terms is particularly curious given that CSL's language is consistent with the scope of the covenant in *Already.*  While Bioverativ touts the supposed similarity of its covenant to the covenant offered by Nike in *Already* (*see, e.g.*, D.I. 319 at 15-16,) it omits that the covenant in that case covered not only "Nike," but also a long list of its affiliates and others:

> NIKE for and on behalf of itself, its parents, subsidiaries, divisions, related companies, affiliated companies, licensees, independent contract manufacturers, assigns, and/or other related business entities, as well as any of their predecessors, successors, directors, officers, employees, agents, distributors, attorneys, representatives, and employees of such entities…

(Curtis Decl., Ex. 13 at 96a, Excerpts of Joint Appendix in *Already, LLC d/b/a YUMS v. NIKE, Inc.* (No. 11-982).)  The covenant provided by Nike thus made clear that it would bind all affiliates of Nike, as well as its successors, assignees, and licensees.  Without language of the sort present in the Nike covenant or the explicit promise CSL proposed—that the covenant would bind any successor in interest to any right, title and/or interest in the '903 patent— Bioverativ's covenant is insufficient and creates uncertainty about whether CSL will be sued again.  *Cf. Bristol-Myers Squibb*, 2011 WL 13371929, at *6.  This is a particularly salient concern where the corporate ownership of Bioverativ and the patents has shifted over time—the patents were prosecuted largely by Biogen, whose hemophilia business was spun out in 2017 to create Bioverativ, which was acquired just a year later by Sanofi.  While the "Bioverativ" entities

continue to exist, they appear to exist in name only and primarily for holding purposes.  The

hemophilia business formerly held by Bioverativ is now branded and marketed as Sanofi's.  (*See,*

*e.g.*, Curtis Decl., Ex. 10, Alprolix.com; Ex. 11, Alprolixpro.com.)  As Bioverativ's corporate

designee on financial topics put it, "Bioverativ doesn't exist anymore as a stand-alone."  (Curtis

Decl., Ex. 14, Schaffnit Dep. 153:20-21.)  Accordingly, a covenant from Bioverativ, standing

alone, does not provide CSL with sufficient protection from future suit.

> **Second**, Bioverativ's covenant does not provide CSL with certainty that it will not face

future litigation on the '903 patent based on the sale of other CSL products.  CSL proposed

language that would have made clear that the covenant prohibited an infringement suit on that

patent involving "any CSL Behring product."  (D.I. 320-1, Ex. 4-B at ¶ 1.)  Bioverativ rejected

that language and instead has limited the covenant to "Idelvion® [Coagulation Factor IX

(Recombinant), Albumin Fusion Protein] . . . and any Coagulation Factor IX (Recombinant),

Albumin Fusion Protein that is no more than colorably different therefrom."  (D.I. 320-1, Ex. 1

at ¶ 1.)  The meaning of "is no more than colorably different therefrom" is too indefinite to

remove the threat of suit on other CSL products.[7]

> Once again, Bioverativ's limitation of the covenant in this regard is not consistent with

*Already*—this time in two respects.  First, in *Already*, a trademark case, the language of the

covenant covered "the appearance of **any of Already's** current and/or previous footwear **product**

---

[7] In the patent context, this language is used for contempt proceedings, where it requires a complicated, multi-factor analysis assessing, among other things, "the differences between the features relied upon to establish infringement and the modified features of the newly accused product," "the nature of the products," "the relevant prior art," whether the modification was obvious in light of the prior art, "the policy that legitimate design-around efforts should always be encouraged," "any prior claim construction," and may require "expert testimony."  *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 882-83 (Fed. Cir. 2011).

*designs* . . . ."  (Curtis Decl., Ex. 13 at 97a.)  In contrast, Bioverativ's covenant does not apply to "any of [CSL's] . . . product[s]," as in *Already*, but applies ***only*** to Idelvion® and products no more than colorably different from Idelvion®.  Second, as applied to "any colorable imitations" of Already's products, the Court held (and counsel admitted) that the *Already* covenant applied to all potential products.  *Already*, 568 U.S. at 93-94 ("We agree with the Court of Appeals that 'it is hard to imagine a scenario that would potentially infringe [Nike's trademark] and yet not fall under the Covenant.'").  Here, however, Bioverativ has not made clear that CSL's future products are protected.  To the contrary, Bioverativ expressly seeks to reserve for itself (and others) the ability to sue CSL in the future by asking the Court to dismiss its claims ***without*** prejudice.

To be broad enough to remove jurisdiction over CSL's counterclaims, the covenant in this case should be as broad as the covenant in *Already*, i.e., it should cover the footprint of the patent without being limited to a particular or current CSL product (plus some limited but undefined penumbra of "colorable difference").  The '903 patent claims dosing of a genus of at least millions of polypeptides.  (*See, e.g.*, D.I. 217 at 14.)  A small change in the amino acid sequence, post-translational modifications, addition of a protein domain, or addition of a linker might radically alter the protein's activity or other properties.  (*See, e.g.*, *id.* at 4-7.)  But it is entirely unclear whether any of these changes would result in a product that Bioverativ considers "no more than colorably different" from Idelvion®.  As courts in this district have recognized, in a broad and unpredictable field like pharmaceuticals, and where competitors have a litigious history, a covenant not to sue that does not reach future products "casts a cloud over [the accused infringer's] research and development efforts" and "show[s] the existence of an actual controversy between the parties."  *Gevo, Inc. v. Butamax Advanced Biofuels LLC*, No. 12-301-

12

SLR, 2013 WL 6627960, at *2 (D. Del. Dec. 16, 2013) (decided after *Already*).  Indeed, that is

the precise reason that CSL asserted its counterclaims for non-infringement, invalidity, and

unenforceability—to obtain certainty over its Factor IX-albumin business and to not have to

worry about a future case involving the '903 patent.[8]

    In addition to the deficiencies with the covenant outlined above, the totality of the

circumstances show that absent a sufficiently broad and definite covenant, there is an actual,

justiciable controversy between the parties regarding the '903 patent.  *See MedImmune*, 549 U.S.

at 127 (holding that the party seeking to assert jurisdiction must show the facts alleged, "under

all the circumstances," demonstrates a substantial controversy warranting declaratory judgment).

As noted above, Bioverativ has been unwilling to negotiate or compromise over the terms of the

very covenant in dispute despite knowing that CSL "agreed in principle that the '903 Patent

should be dropped from the case."  (D.I. 319 at 2.)  This is particularly true where Bioverativ

received CSL's comments on the covenant and stipulation, sat on them for a month, then without

warning executed its own covenant and filed this motion without meeting and conferring.[9]  (*See*

*supra* Section II.B.)  In addition, and perhaps most tellingly, Bioverativ has inexplicably moved

to dismiss its own claims ***without prejudice***.  The fact that Bioverativ did not move to dismiss its

claims with prejudice shows it wants to retain the option to sue CSL on the '903 patent.  *Cf.*

*Shoulder Innovations,* 2012 WL 2092379, at *2 ("Plaintiff refuses to dismiss its own claims with

---

    [8] A significant term remains on the patent—it does not expire until 2030.

    [9] Bioverativ suggests CSL has dragged its feet in negotiations on the covenant (D.I. 319 at 11-
12,) but it is understandable that the negotiations that began just before trial was set to begin in
March lost some urgency for both parties in the shadow of a global pandemic and significantly
delayed trial date.  The fact remains that CSL diligently provided reasonable comments on the
documents which Bioverativ apparently could not accept.  (*See supra* at Section II; Ex. 12 at 1-
2.)

prejudice, insisting on maintaining the ability sue again in the future. . . . In light of the foregoing, Defendant has established a cognizable threat of future suit.").  Bioverativ cannot have it both ways.  By seeking a dismissal of its own claims without prejudice, thereby reserving the ability to re-assert the dismissed claims, Bioverativ has not demonstrated that it "could not reasonably be expected to resume its enforcement efforts."  *Already*, 568 U.S. at 92 (citations and internal quotations omitted).

Bioverativ's covenant not to sue thus has discrete deficiencies that could be remedied by execution of a broad and unconditional covenant.  CSL has previously provided Bioverativ with a covenant not to sue and stipulation of dismissal it would accept to resolve the parties' claims on the '903 patent.  (*See* Exs. 15, 16, clean versions; *see also* D.I. 320-1, Exs. 4-B, 4-C, CSL's redline changes).

## C.      Bioverativ's Assertions About Evidence at Trial Are a Red Herring

Bioverativ spends much of its brief suggesting that CSL's primary sticking point was a demand for an "unfettered ability to present at trial any evidence or argument related to the '903 Patent."  (D.I. 319 at 2, 17.)  The proposals CSL sent show that CSL is interested in ensuring that the dismissal would not serve as an independent ground to exclude evidence otherwise relevant to the remaining claims and defenses.[10]  (*See* D.I. 320-1, Ex. 4-B (agreeing to dismissal provided that Bioverativ "does not use the dismissal of claims relating to the '903 Patent to impede CSL Behring's presentation of evidence relevant to claims and defenses remaining in *Bioverativ I* and *Bioverativ II*"); *id.* at Ex. 4-C at ¶ 4 ("This Stipulation and Order shall not limit or otherwise

---

[10] As one example, if a witness were asked questions about a 14-day dosing regimen in the context of the '903 patent at deposition, the absence of the '903 patent from the case should not provide an independent reason to exclude that testimony to the extent it is relevant to the 14-day dosing regimen claimed in the '091 patent.

affect CSL Behring's ability to defend against Bioverativ's allegations in this Action or *Bioverativ II* on any other ground, or to pursue its remaining counterclaims and defenses").) *Cf. Evonik Degussa GmbH v. Materia Inc.*, No. 09-636-NLH, 2016 WL 1367735, at *3 (D. Del. Apr. 6, 2016) (dismissing counterclaims as moot in light of covenant not to sue, but allowing admission of evidence that would have gone to inequitable conduct where relevant to remaining issues).

### D.    CSL's Proposed Resolution

As noted at the outset, CSL believes that the parties' claims regarding the '903 patent can and should be dismissed from the case in order to streamline this matter.  However, given that Bioverativ has had over three years to make its case with respect to the '903 patent, any dismissal should be subject to terms that do not leave CSL exposed to future litigation.  CSL believes this can be done as follows.

*First*, Bioverativ's infringement claims should be dismissed "with prejudice."  This will foreclose Bioverativ from refiling claims alleging infringing use of Idelvion® at the doses and intervals claimed in the '903 patent.

*Second*, as in *Already*, in order to obtain dismissal of CSL's counterclaims, Bioverativ must provide a covenant that (1) runs with the '903 patent and binds corporate affiliates and successors to rights in the patent and (2) applies to any CSL product.

## IV.   CONCLUSION

There should be no mistake about CSL's position:  the '903 patent should be out of the case.  It should never have been asserted in the first place, and its continued assertion against CSL has been objectively baseless.  In part because of that history of baseless litigation, though, CSL is entitled to certainty that it will not face suit on the '903 patent again.  Bioverativ's claims

on the '903 patent should be dismissed with prejudice.  As for CSL's counterclaims, the preference of CSL is to obtain this certainty through an adequate covenant not to sue.  But without that, CSL must be allowed to seek that certainty through litigation on the merits.  The Court should deny Bioverativ's motion and grant CSL's cross-motion.

OF COUNSEL:

Lisa J. Pirozzolo
Kevin S. Prussia
Emily Whelan
Kelli J. Powell
WILMER CUTLER PICKERING
   HALE AND DORR
60 State Street
Boston, MA 02109
(617) 526-6000

Dated: September 24, 2020

/s/ Frederick L. Cottrell, III
Frederick L. Cottrell, III (#2555)
Christine D. Haynes (#4697)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
haynes@rlf.com

*Attorneys for Defendants*

17

**CERTIFICATE OF SERVICE**

I hereby certify that on September 24, 2020, true and correct copies of the foregoing

document were served, via e-mail, on the following:

Thomas C. Grimm
Jeremy A. Tigan
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
tgrimm@mnat.com
skraftschik@mnat.com

Paul H. Berghoff
Alison J. Baldwin
James C. Gumina
James L. Lovsin
Daniel F. Gelwicks
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, IL 60606

*/s/ Frederick L. Cottrell, III*
Frederick L. Cottrell, III (#2555)
cottrell@rlf.com