IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BIOVERATIV INC., BIOVERATIV
THERAPUTICS INC., and BIOVERATIV
U.S. LLC,

                    Plaintiffs,

            v.

CSL BEHRING LLC, CSL BEHRING
GMBH, and CSL BEHRING LENGNAU
AG,

                    Defendants.

Civil Action No. 17-914-RGA

MEMORANDUM ORDER

Before me are cross-motions to dismiss claims related to U.S. Patent No. 9,629,903 (the

'903 Patent). (D.I. 318, 321).  Bioverativ moves to dismiss, or in the alternative, amend to

remove, its claims of infringement of the '903 Patent and to dismiss CSL Behring's

counterclaims without prejudice. (D.I. 318).  CSL moves to dismiss Bioverativ's claims of

infringement of the '903 Patent with prejudice. (D.I. 321).  The motions have been fully briefed.

(D.I. 319, 322, 325, 328).

## A. BACKGROUND

The parties agree that Bioverativ's '903 Patent infringement claim should be dismissed.

(D.I. 319 at 1; D.I. 322 at 1).  The parties, however, do not agree whether the dismissal should be

with or without prejudice or how the dismissal will impact CSL's counterclaims asserting non-

infringement, unenforceability, and invalidity of the '903 Patent. (D.I. 322 at 1; D.I. 325 at 1).

1

Bioverativ initially raised the possibility of dropping the 903 Patent from this case in February 2020.[1] (D.I. 252 at 2). The parties then attempted to negotiate a stipulation to drop the '903 Patent but were unable to agree. (D.I. 319 at 1; D.I. 322 at 3). In September 2020, Bioverativ executed a unilateral covenant not to sue (D.I. 321-1, Ex. 1) and filed a motion to dismiss the '903 Patent from the case without prejudice. (D.I. 318). Bioverativ's motion also argues that the covenant divests the court of jurisdiction over CSL's declaratory judgment counterclaims. (D.I. 319 at 14-18). CSL disputes the scope of the covenant that Bioverativ provided and asserts that the '903 Patent claims must be dismissed with prejudice. (D.I. 322 at 1).

## B. LEGAL STANDARDS

### i. Voluntary Dismissal

Under Federal Rule of Civil Procedure 41(a)(2), "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Dismissals under Rule 41(a)(2) are granted without prejudice, unless the Court finds otherwise. FED. R. CIV. P. 41(a)(2). Ultimately, the decision to order a dismissal pursuant to Rule 41 is within the District Court's discretionary power. *Ferguson v. Eakle*, 492 F.2d 26, 28 (3d Cir. 1974).

The Third Circuit has set a liberal policy in favor of voluntary dismissals. In *In re Paoli R.R. Yard PCB Litigation*, the Court stated, "Rule 41 motions 'should be allowed unless defendant will suffer some prejudice other than the mere prospect of a second lawsuit.'" 916 F.3d 829, 863 (3d Cir. 1990) (quoting 5 J. MOORE, MOORE'S FEDERAL PRACTICE ¶ 41.05[1], at 41-62 (1988)). If the non-movant were to suffer legal prejudice as the result of the dismissal, a

---

[1] The parties' trial was originally scheduled for March 2020, but has been postponed several times due to the ongoing pandemic. (D.I. 287, 301, 315, 332, 341, 343).

dismissal with prejudice may be warranted. *See Mobil Oil Corp. v. Adv. Envtl. Recycling Tech., Inc.*, 293 F.R.D. 156, 158 (D. Del. 2001).

When determining if a party will suffer legal prejudice, "a court should consider '1) any excessive and duplicative expense of a second litigation; [2] ] the effort and expense incurred by a defendant in preparing for trial; [3] ] the extent to which the pending litigation has progressed; and [4] ] the claimant's diligence in moving to dismiss.'" *Reach & Assocs. v. Dencer*, 2004 WL 253487, at *1 (D. Del. Feb. 9, 2004) (quoting *Spring City Corp. v. Am. Bldgs. Co.*, 1999 WL 1212201, at *1 (E.D. Pa. Dec. 17, 1999).

### ii.   Covenant Not to Sue

Declaratory judgment claims require "a case of actual controversy" justiciable under Article III. *MedImmune, Inc v. Genentech, Inc.*, 549 U.S. 118, 126 (2007).  "A covenant not-to-sue deprives the court of declaratory judgment jurisdiction relating to claims addressed by the covenant." *Pride Mfg. Co. v. Evolve Golf, Inc.*, 2016 WL 6469309, at *2 (D. Del. Oct. 31, 2016).

In the 2013 case *Already, LLC v. Nike, Inc.*, the Supreme Court clarified the appropriate analysis when parties dispute the impact of a covenant-not-to-sue on declaratory judgement counterclaims. 568 U.S. 85, 93-95 (2013).  First, the party offering the covenant must meet its burden under the voluntary cessation doctrine by demonstrating that "it 'could not reasonably be expected' to resume its enforcement efforts." *Already*, 568 U.S. at 92 (quoting *Friends of the Earth, Inc v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)).  The terms of the covenant determine if the offering party has met its burden. *Id.* at 93. If the party offering the covenant is successful, it is "incumbent on [the part asserting counterclaims] to indicate that it engages in or has sufficiently concrete plans to engage in activities not covered by the covenant." *Id.* at 94.

3

## C. DISCUSSION

### i.   Bioverativ's Infringement Claims Should be Dismissed with Prejudice

Bioverativ argues that the Court should dismiss its infringement claims without prejudice because the covenant it has provided to CSL prevents their reassertion. (D.I. 319 at 9).[2] Bioverativ also contends that CSL would suffer no legal prejudice from the dismissal. (*Id.*). CSL responds that, principally due to the advanced stage of the litigation, it is entitled to a dismissal with prejudice. (D.I. 322 at 4-5).

In examining if CSL will suffer prejudice, the Court will consider: (1) the expenses of duplicative litigation; (2) the expenses incurred by CSL in preparing for the instant litigation; (3) the stage to which this case has progressed; and (4) Bioverativ's diligence in moving to dismiss. *Reach*, 2004 WL 253487, at *1.

Bioverativ first raised the possibility of dropping the '903 Patent from this case in February 2020. (D.I. 252 at 2).  At the time, Bioverativ indicated it would be "open to dropping the '903 Patent" to accommodate the addition of three new patents. (*Id.*).  When Bioverativ initially raised the issue of dismissal, the trial was scheduled for March 30, 2020. (D.I. 69 at 11).

Such circumstances warrant a dismissal with prejudice.  This case had been pending for two and a half years when Bioverativ suggested it would drop the '903 Patent. (*See* D.I. 252 at 2).  More importantly, the parties have proceeded through discovery and case dispositive motions. (D.I. 69; D.I. 174). *See, e.g., Hayden v. Westfield Ins. Co.*, 586 F. App'x 835, 843 (3d

---

[2] Bioverativ's paradoxical argument begs the question, why does Bioverativ object to a dismissal with prejudice? For example, in *Already*, on which Bioverativ relies heavily, the party offering the covenant additionally dismissed its claims with prejudice. *Already*, 568 U.S. at 89. Bioverativ explains in a footnote that it "seeks a dismissal that has no preclusive effect on the [other asserted patents] in this case or on the asserted patents in *Bioverative II.*" (D.I. 319 at 9 n.2).  However, the parties agree that a dismissal with prejudice as to the '903 Patent would have no preclusive effect as to other asserted patents. (D.I. 322 at 4; D.I. 325 at 6).

Cir. 2014) (upholding the denial of a voluntary dismissal when the motion was filed "seventeen months after the start of litigation and six months after the close of discovery"); *Ferguson v. Eakle*, 492 F.2d 26, 28 (3d Cir. 1974) (explaining that, "It is . . . an increasingly burdensome matter to one's opponent if a case has been prepared, trial date set and the party and his witnesses on hand and ready for trial"); *Dodge-Regupol, Inc. v. RB Rubber Prods., Inc.*, 585 F. Supp. 2d 645, 652-53 (M.D. Pa. 2008) (granting a voluntary dismissal with prejudice where the claims had been pending for over two years, significant discovery had occurred, and a covenant prevented the reassertion of the claims).

Bioverativ argues it has been diligent in attempting to dismiss the '903 Patent. (D.I. 319 at 13).[3] While it appears that the parties have attempted to agree on a covenant since February 2020, Bioverativ offers no explanation as to why it decided to withdraw the '903 Patent only once the case was ready for trial. It is true, as Bioverativ argues, that the removal of the '903 Patent would "conserve judicial and party resources." (D.I. 319 at 10). Yet it appears unlikely that judicial economy is the reason Bioverativ moved to dismiss the '903 Patent, when it initially raised the issue in a motion to add three additional patents to this case. (D.I. 252 at 2). *See Barrett v. McDaniel*, 2007 WL 1670121, at *4 (W.D. Pa. June 8, 2007) (rejecting movant's explanation of the need for a voluntary dismissal as "wholly unsatisfactory").

The parties have litigated this case for over three years, through discovery and dispositive motions, and the case is ready for trial. *Cf. Mobil Oil*, 203 F.R.D. at 158 ("[T]he discovery in this

---

[3] Bioverativ also argues that any expenses CSL incurred connected to the '903 Patent are not unique and apply to the Asserted Patents of the same family. (D.I. 325 at 7). However, Bioverativ's argument is not persuasive as the parties continue to dispute how much evidence related to the '903 Patent may be introduced at the trial following its dismissal and Bioverativ's brief contains a summary of unique aspects of the '903 Patent that will be dropped from the trial. (D.I. 319 at 6-8, D.I. 322 at 14-15).

case did not progress far enough to warrant a dismissal with prejudice."). Upon consideration of the four factors cited in *Reach*, I conclude that they weigh heavily in favor of a dismissal with prejudice. As such, I will grant CSL's cross-motion to dismiss with prejudice.

Because I find that a dismissal with prejudice is warranted under Rule 41, I will not address Bioverativ's alternative arguments under Rule 15.

### ii.    The Court Lacks Jurisdiction Over CSL's Declaratory Judgment Counterclaims

Bioverativ asserts that the covenant not to sue divests the court of subject matter jurisdiction over CSL's declaratory judgment counterclaims concerning the '903 Patent. (D.I. 319 at 15). CSL objects to the proffered covenant primarily for two reasons: (1) the covenant does not cover Bioverativ's parent company, Sanofi, and (2) the covenant does not eliminate the threat of future suit because it does not cover "any CSL Behring product." (D.I. 322 at 9, 11). I will address each argument in turn.

The covenant states that it "shall be binding on any successor in interest to the entities executing this covenant." (D.I. 321-1, Ex. 1 at 2).[4] Bioverativ argues that the covenant's language is sufficient to ensure that any assignees will be bound. (D.I. 325 at 4-5). In order to clarify that the covenant also covers licensees, CSL suggested alternative language making the covenant "binding on any successor in interest to Bioverativ, as well as any successor-in-interest to any rights, title and/or interests in the '903 Patent." (D.I. 322 at 9-10). Bioverativ rejected CSL's suggested language as unnecessary.[5] (D.I. 325 at 5-6).

Legal encumbrances on the "right to use" a patent run with the patent. *See Datatreasury Corp. v. Wells Fargo & Co.*, 522 F.3d 1368, 1372 (Fed. Cir. 2008). A covenant not to sue is an

---

[4] The covenant (D.I. 320-1, Ex. 1) is cited according to pagination rather than by paragraph.
[5] Begging another question, which is, if the language is "unnecessary," why not just accept it?

encumbrance on the right to use the patent. *Cardiovascular Sys., Inc. v. Cardio Flow, Inc.*, 498

F. Supp. 3d 1080, 1091 (D. Minn. 2020) (stating "a covenant not to sue runs with a patent when

a party assigns the patent because the covenant is a legal encumbrance involving the right to use

the patent"); *see also Molon Motor & Coil Corp. v. Nidec Motor Corp.*, 946 F.3d 1354, 1360-61

(Fed. Cir. 2020) (explaining that, "A covenant not to sue is equivalent to a nonexclusive or 'bare'

license, which is a promise by the patent owner not to sue the licensee for practicing the patented

invention") (internal citations omitted).

Even without a such a covenant, a parent company, like Sanofi, cannot simply assert the

patent rights of its subsidiaries. *Spine Sols., Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620

F.3d 1305, 1317-18 (Fed. Cir. 2010), *abrogated on other grounds by Halo Elecs., Inc. v. Pulse

Elecs., Inc.*, 136 S.Ct. 1923 (2016). In order to have standing to bring an infringement suit,

Sanofi would need to become an assignee, an exclusive licensee, or hold equitable title. *Morrow

v. Microsoft Corp.*, 499 F.3d 1332, 1339-40 (Fed. Cir. 2007) (describing types of standing in

patent infringement suits); *Hologic v. Minerva Surgical, Inc.*, 163 F. Supp. 3d 118, 122 (D. Del.

2016) (finding that parent company could sue for injunctive relief because it had established

equitable standing). Given that the covenant would run with the '913 Patent even if Sanofi

obtained standing to sue for infringement, CSL would still be protected from future suit under its

terms. *Datatreasury*, 522 F.3d at 1372 ("the owner of a patent cannot transfer an interest greater

than that which it possesses"). CSL has not cited to any authority explaining why the covenant's

protection would not attach if Sanofi subsequently attempted to pursue an infringement claim.

CSL also objects to the scope of the covenant, which is limited to: "Idelvion [Coagulation

Factor IX (Recombinant), Albumin Fusion Protein] accused of infringement in *Bioverativ I* and

*Bioverativ II*, and any Coagulation Factor IX (Recombinant), Albumin Fusion Protein that is no

more than colorably different therefrom, before or after the Effective Date of this Covenant."
(D.I. 320-1, Ex. 1 at 1-2). CSL argues the covenant should encompass any CSL product.[6] (D.I.
322 at 12).

      CSL relies primarily on *Gevo, Inc. v. Butamax Adv. Biofuels LLC*, 2013 WL 6627960 (D.
Del. Dec. 16, 2013) in arguing that the scope of the covenant is insufficient. (*See* D.I. 322 at 12-
13). In *Gevo*, the parties disputed the sufficiency of a covenant not to sue that covered the
"Accused Technology," which the court described as "certain modified recombinant
microorganisms." *Gevo*, 2013 WL 6627960, at *1. The party opposing the covenant explained
that "future commercial strains will necessarily have a different genetic background from its
current strains," and that "it will likely resume using the alleged infringing strains if the litigation
is resolved in its favor." *Id.* at *2 (internal quotations and citations omitted). In light of the
parties' long history of litigation, the unpredictability of the art, and the opposing party's "desire
to use the infringing strains," the Court concluded that an actual controversy remained despite
the covenant. *Id.*

      However, while CSL has hypothesized several situations that the covenant offered by
Bioverativ may not cover, it stops short of asserting that it has any plans to conduct these
activities or has plans to engage in research involving the claimed genus. (D.I. 322 at 12 ("A
small change in the amino acid sequence, post-translational modifications, addition of a protein
domain, or addition of a linker might radically alter the proteins activity or other properties.")).
Once the Court in *Already* was satisfied that the covenant covered the allegedly unlawful
conduct, "it was incumbent on [the party opposing the covenant] to indicate that it engages in or

---

[6] CSL argues that it is entitled to a covenant as broad at that upheld in *Already* but ignores that
the covenant in *Already* was limited to current or previous products. *Already*, 568 U.S. at 93.

has sufficiently concrete plans to engage in activities not covered by the covenant." *Already*, 568 U.S. at 94.  The language from *Already* accords with the standard articulated by the Court in *MedImmune*, which requires that "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007); *see also Gevo*, 2013 WL 6627960, at *1 (citing *MedImmune*).

As such, I agree that no controversy of "sufficient immediacy" remains between the parties and that the covenant divests the Court of subject matter jurisdiction of CSL's counterclaims.  CSL's Third, Sixth, and Seventh counterclaims will be dismissed without prejudice insofar as they relate to the '903 Patent. (D.I. 18 ¶¶ 105-123, 134-163).

### iii.    Evidentiary Issues

The parties briefly touch on evidentiary issues in connection with the '903 Patent. (*See* D.I. 319 at 17-18; D.I. 322 at 14-15).  If the parties cannot resolve such issues, they can be raised in connection with the conference scheduled for January 7, 2022.

### D.  CONCLUSION

For the reasons set forth above, Bioverativ's motion to dismiss without prejudice (D.I. 318) is **GRANTED** in part and **DENIED** in part.  CSL's cross-motion to dismiss with prejudice (D.I. 321) is **GRANTED**.  Bioverativ's infringement claims related to the '903 Patent are **DISMISSED** with prejudice and CSL's Third, Sixth, and Seventh counterclaims related to the '903 Patent are **DISMISSED** without prejudice.

IT IS SO ORDERED this _6_ day of August 2021.

/s/ Richard G. Andrews
United States District Judge